UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES ON BEHALF OF TEAMSTERS BENEFITS TRUST,<br><br>    Plaintiff,<br><br>  v.<br><br>A.C. PAVING, INC.<br><br>    Defendant.<br>_____/ | No. C-04-5386 JSW (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br>**(Docket No. 15)** |

Plaintiff Trustees on behalf of the Teamsters Benefit Trust ("Trust") filed suit against Defendant A.C. Paving, Inc. pursuant to the National Labor Relations Act, *see* 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. §§ 1132, 1145. After A.C. Paving failed to respond to the Trust's complaint, default was entered on February 23, 2005. *See* Docket No. 8. The Trust subsequently filed a motion for default judgment, which Judge Judge White referred to the undersigned for a report and recommendation. This Court held a hearing on the motion on May 11, 2005. A.C. Paving did not appear at the hearing, nor did it file any opposition to the motion for default judgment.

Having considered the Trust's briefs and accompanying submissions, the Court hereby recommends that the motion for default judgment be GRANTED.

### I.   FACTUAL & PROCEDURAL BACKGROUND

The Trust filed suit against A.C. Paving on December 20, 2004. According to the complaint, A.C. Paving is a suspended corporation in California, and it was late in making contributions to the

Trust and/or failed to make contributions to the Trust as required by agreements entered into between A.C. Paving and a teamsters local union, No. 431. *See* Compl. ¶¶ 6, 12, 14 & Exs. A-C.

A.C. Paving was served by substitute service on January 12, 2005. After A.C. Paving did not respond to the complaint, the Trust asked for entry of default, which was granted on February 23, 2005. *See* Docket No. 8. The Trust subsequently filed a motion for default judgment.

## II.   DISCUSSION

A.   Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). According to Federal Rule of Civil Procedure 4(h)(1), a corporation may be served "in the manner prescribed for individuals by subdivision (e)(1)," Fed. R. Civ. P. 4(h)(1), and Rule 4(e)(1) in turn allows for service "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1).

Under California law, a summons and complaint may be served on a corporation by delivering a copy of the documents (1) to the person designated as agent for service under certain provisions of the California Corporations Code or (2) to the "president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code Civ. P. § 416.10(a), (b).

A corporation may also be served under California law via "substitute service." That is,

> [i]n lieu of personal delivery of a copy of the summons and complaint to the person to be served as specified in Section 416.10, . . . a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(a).

In the instant case, A.C. Paving was served by substitute service -- *i.e.*, by leaving a copy of the summons and complaint with the person apparently in charge of the office of Larry D. Alford, A.C. Paving's agent for service, and then sending a copy of the summons and complaint to the same address by mail. Accordingly, A.C. Paving was properly served in this case.

The fact that A.C. Paving is (or was[1]) a suspended corporation does not affect the propriety of service of process. California case law indicates that service of process on a suspended corporation may be effectuated under the regular service-of-process statutes. *See Grell v. Laci Lea Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (1999) ("A suspended corporation may be sued, and service of process upon a suspended corporation is effected in the same manner as service upon a corporation that is not suspended."); *cf. Gibble v. Car-Lene Research, Inc.*, 67 Cal. App. 4th 295, 301-02 (1998) (holding that a domestic corporation that is suspended and has no designated agent for service of process -- but that continues to operate as an ongoing business during the suspension -- may be validly served pursuant to California Code of Civil Procedure § 416.10).

B.   Merits of Motion for Default Judgment

After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

As the Trust argues in its motion for default judgment, the majority of the above factors weigh in favor of default judgment. For example, if the motion for default judgment were to be

---

[1] Although A.C. Paving was a suspended corporation at the time of the filing of the complaint and of the motion for default judgment, it appears that subsequently it achieved active status. *See* Docket No. 17 (letter from C. Kerestenzis to Court, dated 5/12/05).

denied, then the Trust would likely be left without a remedy. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiffs' motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claim."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, the sum of money at stake in the action is appropriate -- tailored to the specific misconduct of A.C. Paving. *See id.* at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, because A.C. Paving has not filed an answer to the Trust's complaint, there is little to suggest that there is a possibility of a dispute concerning material facts, and it is unlikely that A.C. Paving's default was due to excusable neglect, especially when the Trust served not only the summons and complaint but also the request for entry of default and motion for default judgment on A.C. Paving but still received no response.

The only factors that deserve closer analysis are the second and third factors. The exhibits attached to the Trust's complaint show that A.C. Paving entered into several agreements with a teamsters local union, No. 431, more specifically: (1) an Individual Construction Agreement, effective June 16, 2002 to June 15, 2006, pursuant to which A.C. Paving agreed to the terms and conditions of a collective bargaining agreement, and (2) a Subscriber's Agreement, effective for the term of the collective bargaining agreement, pursuant to which A.C. Paving adopted the Trust Agreement under which A.C. Paving would make contributions to the Trust to provide health and welfare benefits for employees. *See* Compl., Exs. A-C (agreements).

Article IV, Section 1 of the Trust Agreement provides: "Each Employer shall make payments on behalf of his Employees as provided by the Collective Bargaining Agreement, Subscriber Agreement, or Adoption Agreement in the time and manner prescribed by the Trustees." Article VIII, Section 1 provides: "The monthly payments to the Trust Fund by the Employers, as referred to in Article IV hereof, shall be due on the first (1st) day of the month following the month in which the covered work was performed for the Employer." The complaint alleges -- and the Court must accept as true, *see Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917 (9th Cir.1987) (stating that, upon

entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages") -- that A.C. Paving was late in making contributions to the Trust and/or failed to make contributions to the Trust as required by agreements. *See* Compl. ¶¶ 6, 12, 14. Thus, the Trust has successfully stated a claim for relief under ERISA. *See* 29 U.S.C. § 1145 (providing that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement"); *id.* § 1132(a)(3) (authorizing, *inter alia*, a fiduciary to bring a civil action to enforce an employer's § 1145 obligation).

The fact that A.C. Paving is (or was) a suspended corporation does not protect it from a default judgment. *Cf. Grell*, 73 Cal. App. 4th at 1306 ("[A] suspended corporation is not protected against a judgment by default upon its failure to answer within the time allowed.").

C. <u>Damages</u>

Because default judgment is warranted, the Court must determine what damages are appropriate. Under 29 U.S.C. § 1132(g)(2), a court shall award a fiduciary who prevails in a § 1145 claim (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages as specified in the plan (generally not to exceed 20 percent of the unpaid contributions), (D) reasonable attorney's fees and costs, and (E) other appropriate legal or equitable relief. *See* 29 U.S.C. § 1132(g)(2); *see also* Compl. at 4 (prayer for relief, asking for liquidated damages, unpaid contributions, attorney's fees, interests, and other appropriate relief). In its motion for default judgment, the Trust asks for (1) any unpaid contributions from July 2003 to the present; (2) liquidated damages for any delinquent contributions; and (3) attorney's fees and costs. The Trust has the burden of "proving up" its damages. *See Board of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.,* No. 04-02841 CW, 2005 WL 433462, at *2 (N.D. Cal. Feb. 24, 2005) ("Plaintiff has the burden of proving damages through testimony or written affidavit.").

    1. <u>Unpaid Contributions</u>

5

United States District Court
For the Northern District of California

The Trust asserts that, from July 2003 to the present, A.C. Paving failed to make the full contribution for the month of March 2004, *see* Mot. at 6 (noting that $768.80 was due but that A.C. Paving only paid $76.88); Johnson Decl., Ex. 1 (same), and failed to make any contributions between July 2004 and the present. *See* Mot. at 7.

The Court finds that the Trust has met its burden of proof regarding the unpaid contribution for March 2004 as well as that for December 2004. *See* Johnson Decl. ¶¶ 10(j), 12 (discussing unpaid contributions for these two months). However, the unpaid contributions from July 2004 to November 2004 and from January 2005 to the present are a different story. For these months, the Trust admits that it does not know the actual amount of the unpaid contributions. Rather, the Trust has simply provided an *estimate* of the unpaid contributions. More specifically, the Trust estimates that the contribution for each of the remaining months is $866.45 -- which is the average of the contributions received on May 2004 and June 2004. *See* Mot. at 7 (noting that average of $1,038.50 in May 2004 and $694.40 in June 2004 is $866.45).

This estimate is flawed for at least two reasons. First, to the extent the Trust was making an estimate based on the most recent information it had on actual contributions, it completely ignored the contribution of December 2004, which was markedly less -- only $342.72. Second, a more accurate estimate would have taken into account the average of all of the known contributions made over the months, not just two select months, especially when the contribution for each of the other months, as a general matter, was much less than $866.45. If the Trust were to take into account all of the known contributions -- and not just the known contributions for May 2004 and June 2004 -- then the average would be $578.12 per month.

Moreover, a broader question is why the Trust is making an estimate in the first place when it has the ability to determine the actual contributions owed because it has the right to access A.C. Paving's books. Article VI, Section 3 of the Trust Agreement provides that the Board of Trustees for the Trust

> may require any Employer . . . to submit to it any information, data, reports or documents reasonably relevant to and suitable for the purposes of such administration [of the Fund]. . . . Upon request in writing from the administrator, any Employer will permit a certified public accountant selected by the Board to enter upon the premises of

> such Employer during business hours at a reasonable time or times, and to examine and copy such books, records, papers, or reports of such Employer as may be necessary to determine whether the Employer is making full and prompt payment of all sums required to be paid by him or it to the Trust Fund.

Even if the Trust Agreement did not provide for such a right to examine A.C. Paving's books, arguably, the Trust could ask permission to conduct discovery to determine the actual amount of contributions instead of relying on an estimate. *See* Fed. R. Civ. P. 55(b)(2) ("If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States."); *Sullivan v. DSSA Mgmt., Inc.*, No. 01 C 9228, 2004 U.S. Dist. LEXIS 11125, at *3-4 (N.D. Ill. June 21, 2004) (noting that plaintiff's complaint asked for, *inter alia*, an accounting so that plaintiff could determine what amounts should be paid to the fund and that, after granting plaintiff's motion for default judgment, court required defendant to submit its books and records to plaintiff for completion of an audit and to pay all sums due and owing plus damages specified in the agreement); *DirecTV, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 791 (E.D. Mich. 2004) (holding that, to determine the amount of damages to be assessed against defendants, limited discovery was required "to develop the individualized facts and circumstances regarding their involvement in unlawfully intercepting DTV's encrypted satellite television transmissions"; authorizing plaintiff "to conduct discovery analogous to a creditor's examination to determine not only the financial status of the defendants, but the extent of each defendant's involvement in pirating DTV's transmissions"); *Allen Russell Pub., Inc. v. Levy*, 109 F.R.D. 315, 319 (N.D. Ill. 1985) (in discussing defendant's motion to set aside entry of default, noting that plaintiff had incurred expenses with respect to discovery related to the prove-up and damages issue).

At the hearing on the motion for default judgment, the Court informed the Trust that it had not satisfied its burden of proof on damages with respect to the estimates and gave the Trust a week to decide whether it wanted to forego these damages as part of the motion for default judgment or to pursue them (*e.g.*, by taking discovery of A.C. Paving). The Court told the Trust that, if it did not

file anything with the Court within a week, then the Court would proceed as if the Trust had chosen the former option.  Because the Trust did not make any such filing with the Court, the Court concludes that the Trust has failed to meet its burden of proof on unpaid contributions from July 2004 to November 2004 and January 2005 to the present.  Accordingly, the Court recommends that the Trust be awarded only the unpaid contributions for March 2004 and December 2004, which totals $1,034.64 ($691.92 owed for March 2004 plus $342.72 owed for December 2004).  This is without prejudice to any timely future action to recover damages supported by proof.

      2.    <u>Liquidated Damages</u>

In addition to unpaid contributions, the Trust also asks that it be paid liquidated damages pursuant to the Trust Agreement.

Article IV, Section 1 of the Trust Agreement provides: "Each Employer shall make payments on behalf of his Employees as provided by the Collective Bargaining Agreement, Subscriber Agreement, or Adoption Agreement in the time and manner prescribed by the Trustees." Article VIII, Section 1 provides: "The monthly payments to the Trust Fund by the Employers, as referred to in Article IV hereof, shall be due on the first (1st) day of the month following the month in which the covered work was performed for the Employer." Section 2 goes on to state that, "[i]f an Employer's payment is not received by the Trust or postmarked by the twentieth (20th) day of the month in which it is due, the Employer shall be considered delinquent . . . ." Section 3 (as amended) then provides that an employer's failure to promptly pay contributions will result in liquidated damages as follows:

> *the sum of six (6) percent of the amount of payments due or $25.00, whichever is greater, during the two weeks immediately following the date on which payments become delinquent, and;
>
> *the sum of twelve (12) percent of the amount of payment due, if the delinquency remains unpaid after the first two weeks immediately following the date on which payments become delinquent.

The Trust asks for liquidated damages for (1) tardy contributions (from July 2003 to February 2004 and from April 2004 to June 2004) as well as for (2) unpaid contributions (for March 2004 and from July 2004 to the present), as both are considered delinquent.  With respect to liquidated damages for the tardy contributions, the Court finds that the Trust has met its burden of proof.  The

8

Trust has provided evidence as to the actual amount of contributions owed from July 2003 to February 2004 and from April 2004 to June 2004. *See* Johnson Decl. ¶10(a)-(h), (k)-(l) (discussing late contributions for these months). The same is true with respect to the unpaid contributions for March 2004 and December 2004 because the actual contributions owed are known. However, with respect to the remaining unpaid contributions that are *estimates* only, there is the same problem as above. Accordingly, the Court recommends that the Trust be awarded liquidated damages only for the following months: from July 2003 to February 2004, from April 2004 to June 2004, March 2004, and December 2004. The total is $833.68.

### 3. Attorney's Fees and Costs

Finally, the Trust asks for the reasonable fees and costs it incurred, totaling $4,844.12. According to the Trust, it incurred $4,600 in fees related to this litigation, consisting of 18.4 hours of attorney time at $250 per hour. *See* Kerestenzis Decl. ¶ 12. The Trust also notes that it expects to incur an additional 5 hours of attorney time for its counsel to prepare for, travel to, and attend the default judgment hearing if necessary. *See id.* As for costs, the Trust states that it has incurred $244.12, consisting of a filing fee in the amount of $150, photocopies in the amount of $9, and service-of-process fees (for the summons and complaint) in the amount of $85.12. *See id.* ¶ 15.

Article VIII, Section 2 of the Trust Agreement provides that, if legal action is instituted by the Trust for collection of delinquent contributions, an employer shall pay, *inter alia*, court costs and reasonable attorney's fees. In addition 29 U.S.C. § 1132(g)(2), provides that, "[i]n any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 U.S.C. § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2). *Compare id.* § 1132(g)(1) (providing that a court in its discretion may award fees and costs).

#### a. Attorney's Fees

In its motion for default judgment, the Trust discusses five factors that a court should consider in determining whether an award of attorney's fees is appropriate under ERISA – *i.e.*, (1) the degree of the opposing party's culpability or bad faith, the ability of the opposing party to satisfy an award of fees, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an

award of fees would deter others from acting under similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980).

However, these factors are usually considered when a court determines whether fees should be awarded under § 1132(g)(1), which is discretionary, *see McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (applying the five-factor *Hummel* test to determine whether an ERISA fee award was appropriate under § 1132(g)(1)), and not § 1132(g)(2), which is mandatory. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983) (noting that § 1132(g)(2) "now makes the award of attorney's fees mandatory when the trustees prevail in actions to enforce and collect benefit fund contributions"). In *Kemmis*, the Ninth Circuit indicated that these factors could still inform the *reasonableness* of a fee award under § 1132(g)(2). *See id.* at 997-98 (citing *Hummell*). Reasonableness should also be informed by the typical *Hensley* lodestar/multiplier approach. *See id.* at 998 (citing *Johnson* factors discussed in *Hensley*); *see also Van Gerwen v. Guarantee Mut. Ins. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (applying the *Hensley* lodestar/multiplier approach to determine reasonable attorney's fees under § 1132(g)(1) instead of § 1132(g)(2)).

In the instant case, the attorney's fees sought by the Trust are generally reasonable, both in terms of hours and rate, except for the 5 additional hours of attorney time the Trust *expected* to incur for its counsel to prepare for, travel to, and attend the default judgment hearing -- especially since the Court allowed counsel for the Trust to appear for the hearing by telephone. The Court shall award 1 additional hour of attorney time for the preparation time and time for attendance for the hearing. Accordingly, the Court recommends that the Trust be awarded fees in the amount of $4,850 (*i.e.*, $4,600 + $250).

        b.     Costs

Both § 1132(g)(1) and § 1132(g)(2) specify that not only are attorney's fees recoverable but also costs. In *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996), the Ninth Circuit held that the allowance for costs under § 1132(g)(1) "empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28

U.S.C. § 1821 [providing for witness fees] or by similar such provisions." *Id.* at 544. Given this was the Ninth Circuit's approach for § 1132(g)(1), it is reasonable to apply the same approach to § 1132(g)(2).

The Trust should be able to get as costs the filing fee of $150 and the service-of-process fees (for the summons and complaint) of $85.12. *See* 28 U.S.C. § 1920 (stating that a court may tax as costs fees of the clerk and marshal); Civ. L.R. 54-3(a)(1) ("The Clerk's filing fee is allowable if paid by the claimant."); Civ. L.R. 54-3(a)(2) ("Fees for service of process by someone other than the marshal acting pursuant to FRCivP 4(c), are allowable to the extent reasonably required and actually incurred.").[2]

However, the photocopy cost of $9 should not be covered. Section 1920 allows for "[f]ees for exemplification and copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920. The evidence does not clearly reflect that the photocopies here were necessarily obtained for use in the case. Indeed, the evidence reflects that the photocopies were made on December 15, 2004, at the time that the Trust paid the filing fee and was preparing the court filings, including the complaint. *See* Kerestenzis Decl., Ex. 1. Under Civil Local Rule 54-3(d), "[t]he cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable." Civ. L.R. 54-3(d).

///
///
///
///
///
///
///
///
///

---

[2] *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) ("We think the better view is that § 1920 defines the term 'costs' as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d).").

### III. CONCLUSION

For the foregoing reasons, the Court recommends that the Trust's motion for default judgment be granted and that damages be awarded as follows: $1,034.64 for unpaid contributions; $833.68 for liquidated damages; $4,850 for attorney's fees; and $235.12 for costs.

Any party may file objections to this report and recommendation with the district judge within ten days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3.

Dated: May 23, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge